IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Abigail C., | ) |
| *Plaintiff*, | ) ) ) |
| | ) Case No. 3:22-cv-50172 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) |
| Acting Commissioner of Social Security, | ) ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Abigail C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for child disability benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## I. Background

Plaintiff filed an application for child disability benefits on May 18, 2020, alleging a disability beginning on April 13, 2018, because of bipolar disorder and depression. R. 62. At the time of her alleged onset date, Plaintiff was 15 years old. R. 62.

A remote hearing on Plaintiff's application was held before an administrative law judge (ALJ) on September 21, 2021. R. 13. The ALJ heard testimony from Plaintiff and an impartial vocational expert (VE). R. 13. The ALJ issued a written decision on October 6, 2021, finding that Plaintiff was not disabled under the Social Security Act and thus not entitled to benefits. R. 23.

At step one of the inquiry, the ALJ found that Plaintiff had not attained age 22 as of her alleged onset date and had not engaged in substantial gainful activity since her alleged onset date.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.

1

R. 15–16. At step two, the ALJ found that Plaintiff had the severe impairments of disruptive mood dysregulation disorder, unspecified anxiety disorder, major depressive disorder, and attention deficit hyperactivity disorder (ADHD). R. 16. At step three, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in maintaining concentration, persistence, or pace; and a mild limitation in adapting or managing herself. R. 16–17. The ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 16–18. The ALJ then found that Plaintiff had the residual functional capacity (RFC)

> to perform a full range of work at all exertional levels, but with the following nonexertional limitations: simple and detailed, unskilled and semi-skilled jobs, with 1-5 step instructions; brief and superficial contact with the general public; should work primarily alone, having only occasional contact with supervisors and co-workers, and not having to interact on joint tasks; and can perform no fast-paced or high production quotas.

R. 18. At step four, the ALJ concluded that Plaintiff had no past relevant work. R. 22. Applying Plaintiff's RFC at step five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform, such as hand packager, scrap sorter, and industrial cleaner. R. 22–23.

After the Appeals Council denied Plaintiff's request for review on April 6, 2022, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison*

*Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

As the Commissioner points out, "Plaintiff's arguments are not always clear and at times appear to be based on a misreading of the record." Def.'s Br. at 4, Dkt. 17. For instance, Plaintiff begins the argument section of her brief by claiming, incorrectly, that "[t]he ALJ determined that [Plaintiff] only had mild mental limitations per the 'B' criteria." Pl.'s Br. at 6, Dkt. 12. As noted above, the ALJ in fact determined that Plaintiff had two mild limitations and two moderate limitations. R. 16–17. Plaintiff does not mention the B criteria again, and to the extent that this claim can be construed as an argument, it is forfeited. *See Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663, at *3 (7th Cir. Feb. 8, 2022) (unpublished) (noting that "skeletal 'argument', really nothing more than an assertion, does not preserve a claim") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

The remainder of Plaintiff's opening brief can roughly be characterized as arguing that (1) the ALJ improperly played doctor and should have called a medical expert to testify at the hearing, (2) the ALJ impermissibly cherry-picked evidence when determining her RFC, (3) the ALJ improperly equated Plaintiff's activities of daily living (ADLs) with an ability to work, and (4) the

3

ALJ's subjective symptoms evaluation was erroneous. The Court will address each of these arguments in turn.

**A. Doctor-Playing and Medical Expert Testimony**

Plaintiff argues that "the ALJ should have at a minimum determined [Plaintiff] was limited to sedentary work" and that "[w]ithout a medical expert to testify as to [Plaintiff's] physical limitations, the ALJ could only reach these conclusions by 'playing doctor.'" Pl.'s Br. at 7–8, Dkt. 12. This argument is clearly inapplicable to this case because Plaintiff did not allege any physical impairments or exertional limitations, R. 62, 177, and the ALJ thus found that Plaintiff could "perform a full range of work at all exertional levels" with only non-exertional limitations to account for her mental impairments, R. 18. Because this argument has no application to the present facts, this Court will not address it.[2]

After excising the inapplicable portions of Plaintiff's brief, Plaintiff's argument with respect to doctor-playing and medical expert testimony consists of the following:

> The ALJ also downplayed [Plaintiff's] anger issues. (*Decision page 5*). The ALJ opined that other than having problems with anger and anxious mood, her mental examination findings were typically normal. (*Decision page 9*). The ALJ is not a mental health expert nor did a mental health expert testify at the hearing. The ALJ is relying on her own lay opinion that claimant's anger problems and anxious mood. [sic] The VE specifically testified that an inappropriate or explosive reaction while working would be work preclusive. (AR 59).

Pl.'s Br. at 6–7, Dkt. 12. In addition to being grammatically incomplete, this argument is undeveloped and thus is forfeited. *Garza*, 2022 WL 378663, at *3; *see Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (noting that parties forfeit arguments that are perfunctory, undeveloped,

---

[2] Indeed, four paragraphs of Plaintiff's opening brief appear to have been copied from a brief that Plaintiff's counsel filed in a prior case before this Court. *Compare* Pl.'s Br. at 7–8, Dkt. 12, *with* Brief in Support of Plaintiff's Motion for Summary Judgment at 6–8, *Jennifer S. v. Kijakazi*, No. 20-CV-50239 (N.D. Ill. Mar. 9, 2021), Dkt. 17.

and unsupported by pertinent authority) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

Even setting these errors aside, Plaintiff still does not set forth a claim of doctor-playing. As the Seventh Circuit has explained,

> An ALJ may not "play doctor" by substituting [her] opinion for that of a physician. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). The ALJ, however, is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

*Seamon v. Astrue*, 364 F. App'x 243, 247–48 (7th Cir. 2010) (unpublished). First, Plaintiff does not explain how the ALJ "downplayed" Plaintiff's anger issues. If Plaintiff is arguing that the ALJ assigned too little weight to evidence of Plaintiff's anger issues, then she is improperly inviting the Court to assign greater weight to that evidence, which it cannot do. *See Gedatus*, 994 F.3d at 900 (courts do not reweigh evidence or resolve debatable evidentiary conflicts). Second, although the ALJ stated in her decision that Plaintiff's "mental status examination findings are typically within normal limits," R. 21, the ALJ was referring to mental status examination findings that Plaintiff's providers themselves had described as "normal," "within normal limits," or "WNL." The ALJ cited many of these examples in her decision, acknowledging the normal findings along with Plaintiff's problems with anger, anxiety, and mood. R. 17 (citing R. 323–24, 343, 527, 537, 549, 556, 558, 586). As such, the ALJ was not substituting her lay opinion for these providers' opinions; the ALJ was weighing their opinions, exactly as she was supposed to do. The Seventh Circuit approved a similar analysis in *Seamon*, where, as here, the ALJ imposed a moderate limitation on social functioning after explicitly considering Plaintiff's providers' observations of anxiety, moodiness, and anger, which the ALJ weighed against the other evidence, including normal mental status examination findings. *Seamon*, 364 F. App'x at 248. Third, while the ALJ is

5

not a mental health expert and did not call a mental health expert at the hearing, it is not the case that the ALJ reached her decision without relying on the opinions of mental health experts. Rather, the ALJ assessed RFC restrictions that were analogous to the restrictions opined by Dr. Lev and Dr. Schneider, the state agency psychological consultants who reviewed Plaintiff's application at the initial and reconsideration levels. R. 21. The ALJ was entitled to rely upon these opinions when crafting her RFC, *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004), and Plaintiff has not argued that the ALJ erred in doing so.[3] Finally, because the ALJ's decision rested on these expert opinions, the ALJ was under no obligation to call a mental health expert to testify, a decision that is solely at the ALJ's discretion, as Plaintiff herself recognizes. *See* Pl.'s Reply at 1, Dkt. 22 (citing HALLEX I-2-5-34).

**B. Cherry-Picking**

Plaintiff argues that the ALJ improperly cherry-picked from the record when determining her RFC. Pl.'s Br. at 6, 8–10, Dkt. 12. In particular, Plaintiff faults the ALJ for relying on records from a therapy session on April 30, 2018, and a medication review session on September 22, 2020, where Plaintiff's mental status examinations included normal findings. R. 19–20 (citing R. 320, 526–28). Plaintiff notes that she had been hospitalized from April 13 to April 20, 2018, and that she "screamed the entire session" at the September 2020 medication review. Pl.'s Br. at 9, Dkt. 12; *see* R. 236, 527. In support of her argument, Plaintiff also cites to a June 2021 appointment where she "refused to get out of the car for her session" and "had been screaming and hitting her mother in the car." Pl.'s Br. at 9, Dkt. 12 (citing R. 551). Plaintiff further cites to eight

---

[3] Plaintiff attempts to raise new arguments on this issue in her reply brief, but the Court declines to address them. *Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018) (unpublished) (adding arguments in district-court reply brief is too late to avoid forfeiture) (citing *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002)).

appointments between June 2018 and July 2021 where she discussed or demonstrated symptoms including a desire to self-harm, unwillingness to discuss her condition for fear of being hospitalized, suicidal ideation, repetitive thoughts of death, inability to maintain eye contact, anxiety, judgment affected by her illness, and agitation. *Id.* (citing R. 335, 378, 437–38, 643, 415, 453, 462–63, 559).

In response, the Commissioner argues that the ALJ considered much of this evidence and that Plaintiff is improperly asking the Court to reweigh the evidence in her favor. Def.'s Br. at 6, Dkt. 17. The Commissioner defends the eight RFC restrictions that the ALJ adopted to accommodate Plaintiff's mental impairments and notes that Plaintiff "never quite explains what particular limitation was missing from the RFC that warrant[s] remanding the matter." *Id.* at 2. The Commissioner concludes that the ALJ's "highly detailed RFC went far enough in a case with such mixed findings." *Id.* at 3–4.

"An ALJ . . . cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence, so long [as she] builds a logical bridge from the evidence to [her] conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) (citations omitted). Moreover, an ALJ does not engage in impermissible cherry-picking when she "specifically addresse[s] all the evidence that [the plaintiff] points out" but "d[oes] not assign the significance to it that [the plaintiff] prefers." *Id.* at 426.

Here, the ALJ specifically addressed Plaintiff's psychiatric hospitalization in April 2018 and the fact that she "screamed the entire session" in September 2018. R. 19–20. Although the ALJ did not mention each of Plaintiff's many mental health appointments over the three-and-a-half-year disability period, the ALJ addressed Plaintiff's altercations with her mother, self-

7

injurious behavior, paranoia, suicidal ideation, anxiety, judgment that was only "fair," anger, and fidgeting. R. 19–21. The ALJ also cited examples throughout the disability period where Plaintiff's mental status examinations were within normal limits. R. 19–21. Although Plaintiff may not agree with the significance the ALJ assigned to these mixed findings, Plaintiff "cannot prevail" on a claim of cherry-picking "by arguing that the ALJ improperly weighed the evidence." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Even more fundamentally, Plaintiff's allegation of cherry-picking falls short of an argument for remand. It is not enough for Plaintiff merely to allege that the ALJ should have evaluated more evidence because "an ALJ is not required to provide a 'complete written evaluation of every piece of testimony and evidence.'" *Rice*, 384 F.3d at 370 (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995)). Rather, Plaintiff must also show that the evidence the ALJ purportedly ignored points to a disability finding. *Denton*, 596 F.3d at 425. Plaintiff has not done so here. For instance, Plaintiff does not argue that the evidence she cites bolsters the medical opinions that the ALJ found unpersuasive or undermines the state agency psychological consultants' opinions, which the ALJ was entitled to rely on when crafting her RFC. Although Plaintiff cites the VE's testimony that an inappropriate or explosive reaction while working would be work preclusive, this hypothetical limitation was not endorsed by the state agency psychological consultants. The ALJ was only required to address hypothetical limitations that were supported by the medical record, so the ALJ did not err by declining to address this portion of the VE's testimony. *See Hodges v. Barnhart*, 509 F. Supp. 2d 726, 736 (N.D. Ill. 2007) (noting that when hypothetical question was not supported by the medical evidence, "the ALJ was not required to . . . explain the VE's answer to it.").

Finally, as the Commissioner points out, the ALJ included eight restrictions in her RFC assessment, many of which were aimed at addressing the very evidence Plaintiff alleges the ALJ disregarded—brief and superficial contact with the general public, working primarily alone, occasional contact with supervisors and co-workers, and not having to interact on joint tasks. R. 18. Moreover, Plaintiff does not posit any specific RFC restriction that the ALJ should have included but did not. As such, Plaintiff has not provided the Court with any basis to remand the case for another RFC assessment. *See Gedatus*, 994 F.3d at 905 (finding any alleged error in ALJ's RFC assessment harmless because the plaintiff "ha[d] not pointed to any medical opinion or evidence to show [her impairment] caused any specific limitations").

**C. ADLs**

Plaintiff argues that "[t]he ALJ over inflates [her] abilities due to her ability to perform limited ADLs." Pl.'s Br. at 10, Dkt. 12. Plaintiff argues that the ALJ improperly disregarded "the critical difference between daily living activities and activities of a full-time job." *Id.* at 11 (citing *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005)). Plaintiff argues that she "complains throughout her medical record to treaters about her limited ADL's" and that "[t]he medical evidence fully supported her testimony." *Id.* at 10. Plaintiff does not provide any citations to the record to support these sweeping assertions, and as such, Plaintiff's challenge to the ALJ's analysis of her ADLs is forfeited as unsupported. *See Crespo*, 824 F.3d at 674 (noting that parties forfeit arguments that are perfunctory, undeveloped, and unsupported by pertinent authority); Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5 ("A brief must support assertions of fact by citations to particular parts of the record.").

Even if this argument were not forfeited, a careful review of the ALJ's decision and Plaintiff's testimony reveals that Plaintiff's characterization of both the decision and her testimony

9

is inaccurate.[4] For instance, Plaintiff did not testify that "she often does not shower or change for days at a time, prepares small meals such as sandwiches or cereal [and] does not perform any of the house work," as Plaintiff's counsel alleges. Pl.'s Br. at 10, Dkt. 12. Rather, Plaintiff testified that she has periods of time where she has trouble remembering to shower and that she sometimes cooks meals and cleans the house. R. 43, 51. Plaintiff asserts that "the ALJ states [Plaintiff] can perform all activities of self-care independently, fold laundry, and cook." Pl.'s Br. at 10, Dkt. 12. The ALJ said no such thing. Plaintiff claims that the ALJ ignored her testimony that "she performed these activities only sparingly, relied heavily on others, frequently took breaks, and spent days in bed." *Id.* But Plaintiff never testified to frequently taking breaks, and although Plaintiff may be overstating her testimony that she only did chores occasionally because she lacks motivation or forgets to do them, R. 54; that she relies on others to handle her finances and give her rides, R. 35; and that she has problems getting out of bed in the morning, R. 40, the ALJ did not ignore this testimony—she explicitly discussed it. R. 18–20. Because Plaintiff's argument is both unsupported and contradicted by the record, the Court agrees with the Commissioner that there is no indication that the ALJ equated Plaintiff's daily activities with a capacity to hold down a full-time job, and as such, remand is not warranted on this basis.

**D. Subjective Symptoms Evaluation**

The remainder of Plaintiff's brief challenges the ALJ's subjective symptoms evaluation. Pl.'s Br. at 6, 9–11, Dkt. 12. Plaintiff accuses the ALJ of improperly discounting her testimony, which she describes as follows:

> She testified that due to her depression she will often go days without showering or changing clothes. She will spend most of her

---

[4] Indeed, this paragraph appears to have been copied from another brief Plaintiff's counsel filed in a prior case before this Court. *Compare* Pl.'s Br. at 10, Dkt. 12, *with* Plaintiff's Motion for Summary Judgment at 10, *Kate J. v. Kijakazi*, No. 21-CV-50334 (N.D. Ill. Feb. 1, 2022), Dkt. 12.

> day in her bed or on the couch due to depression. She testified she gets 5 hours of broken sleep and often wakes up exhausted. She is paranoid to sleep on her own when her parents aren't around.

*Id.* at 6. Plaintiff cites by way of example that the ALJ "makes no effort to analyze" her testimony that "she is not able to keep a schedule without the instruction of her parents," although Plaintiff herself acknowledges that "[t]he ALJ did note that [she] relies on her parents for assistance with her daily medication later on in the decision." *Id.* Plaintiff also alleges that the ALJ erred by not mentioning her testimony "that she can only play video games for twenty minutes," *id.*, but this allegation does not withstand scrutiny—Plaintiff testified that she would play video games for around twenty minutes after waking up and eating, but she never testified that she was *incapable* of playing for more than twenty minutes. R. 42. These specific examples of the ALJ's allegedly improper subjective symptoms evaluation are not supported by the record. Moreover, the Court's review of the ALJ's subjective symptoms evaluation provides no basis for remand.

An ALJ must justify her evaluation of a claimant's subjective symptoms with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). The ALJ must consider all of the record evidence regarding the claimant's symptoms, including daily activities, the severity of the symptoms, precipitating and aggravating factors, medication, and other treatment or measures used to relieve the symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's subjective symptoms evaluation will not be overturned "unless it is 'patently wrong,'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012), which means it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). Not all of the ALJ's reasons must be valid, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

11

The Commissioner provides five reasons why the ALJ's subjective symptoms evaluation was not patently wrong:

> First, the ALJ observed that the record contained many normal mental status examination findings. Tr. 21 (*citing* Tr. 537, 549, 555-56, 558). Second, the ALJ noted that plaintiff generally improved when compliant with medications and treatment. Tr. 20-21 (*citing* Tr. 555 (some success with Topamax), 586 ("she is feeling better today")). Third, the ALJ pointed out that against claims of significant social difficulties that plaintiff had friends, attended a Halloween party and an out-of-state wedding, and even took a trip to Lake Geneva with those friends. Tr. 19 (*citing* Tr. 44, 321). Fourth, plaintiff did not always follow through with treatment and provided negligible reasons such as not wanting to wake up early for treatment, an entirely invalid reason for avoiding treatment particularly for someone seeking disability. Tr. 21 (*citing* Tr. 37-38 (did not want to wake early in the morning for treatment), 560 (does not want to take recommended medication)). Finally, the ALJ actually extended the benefit of the doubt to the claimant and included many limitations that were not recognized by Drs. Lev or Schneider largely on account of plaintiff's allegations. Tr. 18.

Def.'s Br. at 7, Dkt. 17.

In her reply brief, Plaintiff does not address her normal mental status examinations, her improvement when compliant with medications and treatment, her failure to follow through with treatment, or the fact that the ALJ included limitations largely on account of her allegations. By failing to rebut these four reasons noted by the Commissioner, Plaintiff has forfeited any challenge to their validity. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in forfeiture). Furthermore, these are exactly the kinds of specific reasons supported by the record that an ALJ may properly rely on to justify a subjective symptoms evaluation. *See* 20 C.F.R. § 404.1529(c)(3); *e.g.*, *Pepper*, 712 F.3d at 368 (upholding credibility determination that discussed claimant's symptoms, social activities, medication, other treatment, and medical opinions). In her reply brief, Plaintiff addresses only her social interactions, stating that "[h]aving one day out, having some childhood friends, and leaving

12

the state once are isolated incidents" that could have reflected "good days." Pl.'s Reply at 3, Dkt. 22. This criticism invites the Court to reweigh the evidence, which the Court cannot do. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("When [the plaintiff] criticizes the ALJ's analysis of her daily functioning, her good and bad days, and her pain, she is . . . inviting us to reweigh the evidence."). Even assuming for the sake of argument that Plaintiff is correct and this one reason is invalid, the ALJ's subjective symptoms evaluation still finds sufficient support in the remaining four valid reasons and thus is not patently wrong. *See Halsell*, 357 F. App'x at 722; *see also Elder*, 529 F.3d at 413 (noting that courts do not review subjective symptoms evaluation *de novo* but "merely examine whether the ALJ's determination was reasoned and supported").[5]

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

Date: May 22, 2023          By: *Lisa A. J.*
                                Lisa A. Jensen
                                United States Magistrate Judge

---

[5] Plaintiff again complains that "the ALJ did not have a testifying physician at the hearing to determine the severity of [her] physical symptoms." Pl.'s Br. at 11, Dkt. 12. As explained above, Plaintiff did not allege physical symptoms, and to the extent Plaintiff's argument relates to her psychological symptoms, the decision whether to call a mental health expert was solely at the ALJ's discretion.